MILLER NASH LLP
Phillip Allan Trajan Perez, Bar No. 234030
trajan.perez@millernash.com
340 Golden Shore, Suite 450
Long Beach, CA 90802
Telephone: 562.435.8002
Facsimile: 562.435.7967

Attorneys for Plaintiff
Marathon Petroleum Company LP

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| Marathon Petroleum Company LP,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Highland Cargo Inc.<br><br>　　　　　Defendant. | Case No. '24CV0298 BAS AHG |

Marathon Petroleum Company LP ("Marathon") hereby asserts the following claims against Highland Cargo Inc., a California corporation ("Station Defendant").

## PARTIES

1. Marathon is a limited partnership formed under the laws and protections of the State of Delaware, with its principal place of business located in the state of Ohio. Marathon's partners are the following: (a) MPC Investment LLC (General Partner), (b) Marathon Petroleum Corporation (Limited Partner), and (c) Giant Industries, Inc. (Limited Partner).

　　a.　MPC Investments LLC is a limited liability company formed under the laws and protections of the State of Delaware with its principal place of business located in the State of Ohio. MPC Investments LLC's sole member is Marathon

Petroleum Corporation.

  b. Marathon Petroleum Corporation is a corporation formed under the laws and protections of the State of Delaware with its principal place of business located in the State of Ohio.

  c. Giant Industries, Inc. is a corporation formed under the laws and protections of the State of Delaware with its principal place of business located in the State of Ohio.

2. Station Defendant Highland Cargo Inc. is a California corporation with its principal place of business in Victorville, California.

3. At all times relevant to this complaint, Mandeep Singh was the president, principal, and acting agent of Station Defendant.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in this Court.

5. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332.

6. As described above, complete diversity of citizenship is present because Plaintiff is a citizen of Delaware and Ohio, while defendant is a citizen of California.

7. As described below, Marathon alleges damages of at least $4,695,589.40 which exceeds the $75,000 threshold for diversity jurisdiction cases.

8. Additionally, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331.

9. As described below, Marathon contends that Station Defendant infringed upon Marathon's trademarks constituting violations of several federal statutes, including 15 U.S.C. § 1114 and 1125. Therefore, this action also qualifies for federal question jurisdiction.

10. This action arises out of a contractual arrangement (described in greater detail below) by which Station Defendant operated an ARCO-branded retail

gasoline station at 1990 Oceanside Blvd., Oceanside, California 92054 (the "Station").

11.     This Court is the appropriate venue for this action pursuant to 28 U.S.C. § 1391 because the acts and omissions giving rise to the claims asserted in this action occurred within San Diego County, California.

## FACTS

### A. The Underlying Relationship

12.     On August 19, 2008, BP West Coast Products LLC and Song Kim Inc. entered into a Contract Dealer Gasoline Agreement (the "Gas Agreement") for the provision of gasoline at 1990 Oceanside Blvd., Oceanside, CA 92054 (the "Station") that became effective on May 1, 2018 and had a base 120-month term.

13.     Additionally, on August 19, 2008, BP West Coast Products LLC and Song Kim Inc. entered into a separate ampm Mini Market Agreement (the "ampm Agreement") which provided the operator the right to run an ampm Mini Market at the Station starting May 1, 2018, and lasting for the following 120 months.

14.     On January 16, 2018, Song Kim Inc. assigned its interest in the Gas Agreement and ampm Agreement to Kohanoff Oceanside Inc. Kohanoff Oceanside Inc. then assigned its interest in the Agreements to Station Defendant on July 14, 2020.

15.     In August of 2012 BP West Coast Products LLC and a number of related entities assigned their interest in the agreements to Tesoro Refining & Marketing Company LLC.

16.     On February 2, 2022, Tesoro Refining & Marketing Company LLC assigned its interest in all agreements related to the Station and Station Defendant to Marathon, including both the Gas Agreement and the ampm Agreement.

17.     Marathon originally initiated termination of both Agreements on September 1, 2022, due to Station Defendant's failure to obtain proper permitting for the Station, but the breach of the Agreements was cured by the Station

Defendant.

18. On February 22, 2023, Marathon began the termination process again due to material breaches by Station Defendant, including but not limited to the below:

    a. Since January 26, 2023, Station Defendant had failed to purchase gasoline from Marathon and offer for sale all grades of gasoline which Marathon sells to meet customer demand.

19. Under the February 22 termination, the Agreements were to end on May 25, 2023, but on March 24, 2023, Station Defendant filed bankruptcy staying the pending termination. *See In re Highland Cargo. Inc.*, Case No. 2:23-bk-11773-vz (C.D. Cal. Bankr.). Station Defendant did not list Marathon amongst its creditors or otherwise attempt to discharge any obligation to Marathon in that bankruptcy.

20. Marathon reinitiated termination procedures against Station Defendant on June 30, 2023, providing another 10 days for Station Defendant to cure the breaches. Station Defendant did not cure those breaches and both Agreements terminated on July 10, 2023.

**B. The Marks Issue**

21. Marathon, through its subsidiaries, is the effective rightsholder of several registered trademarks (collectively, the "Marks") related to the provision of gasoline or gasoline convenience stores at the Station including but not limited to:

    a. ARCO (Mark nos. 1495419, 1496212, 1421446, 1411681)

    b. ampm (Mark nos. 97847809 (pending), 1291514, 1338327)

22. Except for the pending mark, the Marks have become incontestable within the meaning of Lanham Act Section 15, 15 U.S.C. § 1065.

23. The ARCO marks have been in continuous use since 1966 in connection with the refining, distribution, and retail sale of gasoline.

24. The ampm marks have been in continuous usage since at least 2009 in connection with the operation of convenience stores, especially relating to gasoline

service stations.

25. As a result of the widespread, continuous, and exclusive use of the Marks by Marathon and/or its subsidiaries, Marathon holds a valid federal statutory and common law right to use and enforce the Marks.

26. The Marks are distinctive to the public especially as they relate to the provision of gasoline and related convenience stores. Marathon has expended substantial time, money, and resources to market, advertise, and promote the products sold under the Marks.

27. As a result of their distinctiveness, widespread use, and promotion throughout the United States, the Marks are famous marks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts alleged herein.

28. The Gas Agreement authorized and required Station Defendant to employ ARCO Brand marks at the Station for the duration of the agreement and comport with other brand standard guidelines.

29. The Gas Agreement was clear that Station Defendant was only licensed to use the ARCO marks for "the term of this Agreement." And, "From and after the effective date of termination or nonrenewal, [Station Defendant] will immediately discontinue all use of trade dress and Marks [], including without limitation use of such trade dress and Marks on dispensers, pumps, containers, storage equipment, buildings, canopies, pump islands, pole signs, advertising, stationary, and invoices." Additionally, Station Defendant was to "destroy all signs, advertising, graphics and other materials in [their] possession bearing any Marks or used in any trade dress."

30. Similarly, the ampm Agreement gave the Station Defendant the right to use the ampm marks "until the termination or expiration of [the ampm] Agreement." It provided that Station Defendant "must, immediately upon the termination or expiration of [the ampm] Agreement, cease and forever abstain from

using the Marks, or any of them."

31. Yet, after termination of the Agreements on July 10, 2023, Station Defendant persisted in using both ARCO and ampm marks throughout the Station. Station Defendant continues to unlawfully use the Marks to this day.

**C. The Equipment Issue**

32. Alongside the Gas Agreement and ampm Agreement, Station Defendant agreed to a number of equipment-related agreements related to improvements at the Station. One such agreement was the Card Reader Solution and Fee Pass Through Agreement (the "Card Reader Agreement").

33. The Card Reader Agreement provided that Marathon would install new card readers on the premises to provide increased security against credit card fraud. In turn, Station Defendant was to pay a fee for the installation costs associated with the readers at the site and pay an ongoing customer support fee associated with the readers.

34. The Card Reader Agreement began on October 2, 2020 and had a term of 48 months from the installation of the Invenco equipment contemplated therein. The equipment was installed on April 22, 2021; therefore, the Card Reader Agreement term was effective until April 22, 2025.

35. The Card Reader Agreement contains an Early Termination provision which liquidated Marathon's damages associated with de-installation and contractual payments to Invenco. Pertinently, that provision stated that if the Card Reader Agreement was terminated early, as it was on July 10, 2023, "Franchisee must pay [Marathon] all amounts payable for Invenco Products and Services for remainder of the Term, and must also pay for removal of equipment…"

36. The Card Reader Agreement also contains an Early Termination provision related to Marathon's damages associated with Verifone and other OPT Equipment. The Card Reader Agreement states Station Defendant "acknowledges and agrees that [Marathon] will incur a fee payable to Verifone equal to $66.00

multiplied by the number of months remaining in the Term of this Agreement…"

37. Under the two provisions, at the time of termination, Station Defendant was obligated to pay Marathon a total of $17,916.00 per the Card Reader Agreement termination provisions.

### D. The Loan Agreement

38. Station Defendant also assumed an existing loan related to the Station on July 7, 2020. (The "Loan Agreement"). The Loan Agreement provided that Station Defendant assumed responsibility for an existing promissory note owing to Marathon from the previous operators.

39. At the time of termination, the Loan remained unpaid and by its terms the loan was due as of termination of the agreements. Station Defendant has made no attempt to pay the remaining balance on the Loan.

### E. Fuel Damages Associated with Early Termination

40. The Gas Agreement provided that beginning on May 1, 2018, for 120 months Marathon would be the provider of gasoline to the Station.

41. Between the start of the Gas Agreement and the termination on July 10, 2023, Station Defendant purchased on average 136,448.19 gallons of fuel per month. Marathon expected to receive these benefits for the full term of the Gas Agreement pursuant to its ordinary terms.

42. At the time of termination, 57 months of the 120-month term remained. Therefore, Marathon reasonably expected to receive an additional $4,005,220.26 in profit from Station Defendant during the remainder of the term and is entitled to the same for Station Defendant's breach. *See*, *e.g.*, *National Controls, Inc. v. Commodore Bus. Machines, Inc.*, 163 Cal. App. 3d 688, 696-99 (1985) (discussing appropriate damages for breach of contract for lost volume sellers).

### F. The Subsequent Acts of Defendant Giving Rise to This Action

42. Despite termination of the Gas Agreement on July 10, 2023, Station

Defendant continues to employ Marathon's registered marks including remaining branded as an ARCO station and continuing to operate its convenience location as an AMPM.

43. These uses include selling products which appear under ampm and ARCO branding despite those products not being sourced from Marathon or its companies. Station Defendant has sold and continues to sell products that he did not purchase from Marathon, and that Marathon does not endorse, using the ampm Mark and ARCO Mark at the Station.

44. Marathon also contracts the marks to nearby stations with which Station Defendant competes unlawfully by using the Marks without agreement.

45. Additionally, Station Defendant has prevented Marathon from removing its equipment from the Station as Marathon is entitled to do pursuant to the terms of the Gas Agreement. This includes but is not limited to the credit card equipment owned by Marathon which was provided to the Station Defendant as part of the Card Reader Agreement.

46. When Marathon attempted to arrange for collection of its property from the site, including removal of the Marks, Station Defendant affirmatively prevented Marathon accessing the Stations, sending the following message:

> Today 10:32 AM
>
> I told u no one is allowed at my site
>
> U can't send anyone without my permission tell them to leave my site asap and leave the way it was before
>
> I will mark the call after I have list u won't decide that on my site

47. Station Defendant has similarly refused to pay any portion of the fees or damages to Marathon noted above.

48. Simply put, Station Defendant has no intention of honoring the Agreements or otherwise complying with the law absent this Court's intervention. And, absent the Court's intervention, Marathon will lose the benefit of the bargain under the pertinent agreements.

**FIRST CAUSE OF ACTION: Breach of Contract - Gas Agreement**

49. Marathon incorporates and restates paragraphs 1-48, and their sub-paragraphs, as if fully stated herein.

50. Station Defendant materially breached the Gas Agreement on June 27, 2023 through the acts prior noted.

51. At the time of the breach, Marathon had performed all material obligations required by the Gas Agreement.

52. Any non-performance by Marathon was excused by Station Defendant's affirmative material breach.

53. Marathon was damaged in an amount to be proven at trial currently estimated at $4,005,220.26.

54. Marathon seeks recovery of that amount, costs, attorneys' fees, and all other relief this Court deems proper.

**SECOND CAUSE OF ACTION: Breach of Contract - Loan Agreement**

55. Marathon incorporates and restates paragraphs 1-54, and their sub-paragraphs, as if fully stated herein.

56. Station Defendant materially breached the Loan Agreement on June 27, 2023 through the acts prior noted.

57. At the time of the breach, Marathon had performed all material obligations required by the Loan Agreement.

58. Any non-performance by Marathon was excused by Station Defendant's affirmative material breach of the related agreements.

59. Marathon was damaged in the amount of the unpaid loan amount with accrued interest, less amounts as noted by the Loan Agreement.

60. Marathon is entitled to a recovery from Station Defendant pursuant to the terms of the Loan Agreement.

61. Marathon seeks recovery of that amount, costs, and all other relief this Court deems proper.

**THIRD CAUSE OF ACTION: Breach of Contract - ampm Agreement**

62. Marathon incorporates and restates paragraphs 1-61, and their sub-paragraphs, as if fully stated herein.

63. Station Defendant materially breached the ampm Agreement on June 27, 2023 through the acts prior noted.

64. At the time of the breach, Marathon had performed all material obligations required by the ampm Agreement.

65. Any non-performance by Marathon was excused by Station Defendant's affirmative material breach of the ampm and related agreements.

66. Marathon was damaged in the amount of its expectation damages currently estimated at $377,872.

67. Marathon is entitled to a recovery from Station Defendant pursuant to the terms of the ampm Agreement.

68. Marathon seeks recovery of that amount, costs, and all other relief this Court deems proper.

**FOURTH CAUSE OF ACTION: Trademark Infringement (15 U.S.C. § 1114)**

69. Marathon incorporates and restates paragraphs 1-68, and their sub-paragraphs, as if fully stated herein.

70. Marathon is the owner of the Marks which are registered, valid, and legally protectible.

71. Station Defendant is employing the Marks without the consent of Marathon.

72. Station Defendant is using the Marks for the benefit of its business for profit.

73. Station Defendant used the Marks knowingly and intentionally to confuse consumers.

74. Station Defendant's usage of the Marks is likely to cause confusion or deceive consumers into believing that Marathon is associated with or the source of Station Defendant's products.

75. Accordingly, Marathon requests that this Court provide all relief allowable at law including but not limited to an award of all profits associated with Station Defendant's use of the Marks, damages attributable to Station Defendant's use of the Marks, costs of suit, and Marathon's attorney's fees.

76. Additionally, Marathon requests that this Court enter a permanent injunction preventing Station Defendant from using the Marks in the course of its business unless it receives the consent of Marathon or another registered owner of the Marks.

### FIFTH CAUSE OF ACTION: Common-law Trademark and Trade Dress Infringement

77. Marathon incorporates and restates paragraphs 1-76, and their sub-paragraphs, as if fully stated herein.

78. Marathon is the owner of the Marks which are registered, valid, and legally protectible.

79. Station Defendant used the Marks knowingly and intentionally to confuse consumers.

80. Station Defendant's unauthorized usage of the Marks is likely to cause confusion or deceive consumers into believing that Marathon is associated with or the source of Station Defendant's products.

81. Accordingly, Marathon requests that this Court provide all relief allowable at law including but not limited to an award of all profits associated with

Station Defendant's use of the Marks, damages attributable to Station Defendant's use of the Marks, costs of suit, and Marathon's attorney's fees.

82. Additionally, Marathon requests that this Court enter a permanent injunction preventing Station Defendant from using the Marks in the course of its business unless it receives the consent of Marathon or another registered owner of the Marks.

### SIXTH CAUSE OF ACTION: Violation of the Lanham Act – Consumer Confusion
### (15 U.S.C. § 1125 (a)(1)(A))

83. Marathon incorporates and restates paragraphs 1-82, and their sub-paragraphs, as if fully stated herein.

84. Marathon is the owner of the Marks which are registered, valid, and legally protectible.

85. Station Defendant is employing the Marks without the consent of Marathon.

86. Station Defendant is using the Marks for the benefit of its business for profit.

87. Station Defendant used the Marks knowingly and intentionally to confuse consumers.

88. Station Defendant's usage of the Marks is likely to cause confusion or deceive consumers into believing that Marathon is associated with or the source of Station Defendant's products.

89. Accordingly, Marathon requests that this Court provide all relief allowable at law including but not limited to an award of all profits associated with Station Defendant's use of the Marks, damages attributable to Station Defendant's use of the Marks, costs of suit, and Marathon's attorney's fees.

90. Additionally, Marathon requests that this Court enter a permanent injunction preventing Station Defendant from using the Marks in the course of its

business unless it receives the consent of Marathon or another registered owner of the Marks.

### SEVENTH CAUSE OF ACTION: Violation of the Lanham Act – Misbranded Goods (15 U.S.C. § 1125 (a)(1)(B))

91. Marathon incorporates and restates paragraphs 1-90, and their sub-paragraphs, as if fully stated herein.

92. Marathon is the owner of the Marks which are registered, valid, and legally protectible.

93. Station Defendant is employing the Marks without the consent of Marathon.

94. Station Defendant is using the Marks for the benefit of its business for profit.

95. Station Defendant used the Marks knowingly and intentionally to misrepresent the nature, characteristics, and qualities of their services and/or commercial activities.

96. Accordingly, Marathon requests that this Court provide all relief allowable at law including but not limited to an award of all profits associated with Station Defendant's use of the Marks, damages attributable to Station Defendant's use of the Marks, costs of suit, and Marathon's attorney's fees.

97. Additionally, Marathon requests that this Court enter a permanent injunction preventing Station Defendant from using the Marks in the course of its business unless it receives the consent of Marathon or another registered owner of the Marks.

### EIGHTH CAUSE OF ACTION: Unfair Competition - Trademark Infringement (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

98. Marathon incorporates and restates paragraphs 1-97, and their sub-

paragraphs, as if fully stated herein.

99. As noted in other causes of action, Station Defendant's usage of the Marks is unlawful.

100. By misusing the Marks, Station Defendant is also engaged in deceptive, untrue, and misleading advertising.

101. Therefore, Station Defendant is engaged in unfair competition.

102. Accordingly, Marathon requests that this Court order restitution of all amounts Station Defendant has gained through misuse of the Marks.

## **NINTH CAUSE OF ACTION: Trademark Infringement**
## **(Cal. Bus & Prof. Code § 14245)**

103. Marathon incorporates and restates paragraphs 1-102, and their sub-paragraphs, as if fully stated herein.

104. Marathon is the owner of the Marks which are registered, valid, and legally protectible.

105. Station Defendant is employing the Marks without the consent of Marathon.

106. Station Defendant is using the Marks for the benefit of its business for profit.

107. Station Defendant used the Marks knowingly and intentionally to confuse consumers.

108. Station Defendant's usage of the Marks is likely to cause confusion or deceive consumers into believing that Marathon is associated with or the source of Station Defendant's products.

109. Accordingly, Marathon requests that this Court provide all relief allowable at law including but not limited to an award of all profits associated with Station Defendant's use of the Marks, damages attributable to Station Defendant's use of the Marks, costs of suit, and Marathon's attorney's fees.

110. Additionally, Marathon requests that this Court enter a permanent

injunction preventing Station Defendant from using the Marks in the course of its business unless it receives the consent of Marathon or another registered owner of the Marks.

### TENTH CAUSE OF ACTION: Dilution- Tarnishment (15 U.S.C. § 1125 (c))

111. Marathon incorporates and restates paragraphs 1-110, and their sub-paragraphs, as if fully stated herein.

112. Station Defendant employs the Marks.

113. The Marks are famous and distinctive as required by 15 U.S.C. § 1125 (c)(1) and (c)(2)(A).

114. Marathon is the ultimate owner of the Marks.

115. Station Defendant has no right to employ the Marks.

116. Station Defendant's usage of the Marks is likely to cause dilution by tarnishing the reputation of the Marks.

117. Accordingly, Marathon is entitled to and hereby requests that this Court enter an injunction preventing Station Defendant from employing the Marks.

118. Additionally, Marathon requests that this court award it the lost profits, damages, costs, and attorney's fees associated with Station Defendant's use of the Marks as allowed by statute.

### ELEVENTH CAUSE OF ACTION: Conversion

119. Marathon incorporates and restates paragraphs 1-118, and their sub-paragraphs, as if fully stated herein.

120. Marathon retained the right to retrieve its property from the Station at the termination of the Gas Agreement.

121. Station Defendant barred Marathon from retrieving its property as it was lawfully entitled to do.

122. Station Defendant has acted to permanently deprive Marathon of its property.

123. Accordingly, Marathon is entitled to the return of its property or the

1  value thereof and requests that this Court award it damages in the value of the
2  property.

### TWELTH CAUSE OF ACTION: Breach of Contract – Card Reader Agreement

124. Marathon incorporates and restates paragraphs 1-123, and their sub-paragraphs, as if fully stated herein.

125. Station Defendant materially breached the Card Reader Agreement on June 27, 2023 through the acts prior noted.

126. At the time of the breach, Marathon had performed all material obligations required by the Card Reader Agreement.

127. Any non-performance by Marathon was excused by Station Defendant's affirmative material breach of the Card Reader and related agreements.

128. Marathon was damaged in the amount of its damages liquidated at $17,916.00.

129. Marathon is entitled to a recovery from Station Defendant pursuant to the terms of the Card Reader Agreement.

130. Marathon seeks recovery of that amount, costs, and all other relief this Court deems proper.

### Prayer For Relief

Wherefore, Marathon requests that this Court:

1. Order Station Defendant to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the ARCO mark or ampm mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the ARCO mark or ampm mark;

2. Order Station Defendant to recall and deliver up for destruction all

packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the ARCO mark or ampm mark or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of the ARCO mark or ampm mark;

3. Order, under Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Station Defendant to file with the court and serve upon Marathon's counsel within 30 days after service on Station Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Station Defendant has complied therewith;

4. Grant such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Station Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Marathon;

5. Order Station Defendant to account to and pay to Marathon all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Marathon for the damages caused thereby;

6. Award Marathon punitive and exemplary damages as the court finds appropriate to deter further intentional and willful infringement;

7. Declare that this is an exceptional case under Section 35(a) of the Lanham Act and award Marathon its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

8. Award the expectation damages of Marathon due to the breach of the Gas Agreement;

9. Award the expectation damages of Marathon due to the breach of the ampm Agreement;

10. Award the expectation damages of Marathon due to breach of the Card Reader Agreement;

11. Award the expectation damages of Marathon due to the breach of the Loan Agreement;

12. Award Marathon interest, including prejudgment and post-judgment interest, on the foregoing sums;

13. Award Marathon its costs for bringing suit;

14. Award Marathon its attorney's fees; and

15. Award any other relief that this Court deems proper.

Dated: February 14, 2024          MILLER NASH LLP

By: /s/ Phillip Allan Trajan Perez
Phillip Allan Trajan Perez
Attorneys for Plaintiff
Marathon Petroleum Company LP